**AFFIRM; and Opinion Filed August 13, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-00303-CV

## STOVALL & ASSOCIATES, P.C., Appellant

V.

## HIBBS FINANCIAL CENTER, LTD, Appellee

### On Appeal from the 101st Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC10-15189

## OPINION

Before Justices FitzGerald and Lewis[1]
Opinion by Justice Lewis

This is a dispute between landlord, Hibbs Financial Center, Ltd (HFC), and its tenant, Stovall and Associates, P.C. In two issues, we must determine whether HFC is entitled to (1) summary judgment on its claim for breach of a lease agreement as a result of Stovall's alleged failure to pay rent and (2) reasonable attorney's fees. Stovall challenges HFC's summary-judgment evidence and the trial court's rejection of its statute-of-frauds defense and claimed issues of fact. Stovall also contends the trial court erred in awarding attorney's fees to HFC. We affirm the trial court's judgment.

---

[1] The Honorable Mary L. Murphy was on the panel and participated at the submission of this case. Due to her resignation from this Court on June 7, 2013, she did not participate in the issuance of this Opinion. *See* TEX. R. APP. P. 41.1(a), (b).

**BACKGROUND**

Stovall is a law firm that leased office space from HFC in a building located at 6750 Hillcrest Plaza Drive in Dallas. Pursuant to the lease agreement signed by the parties, Stovall leased suite 201, which measured approximately 1,680 square feet, and agreed to pay HFC $2,135 per month (or $15.25 per square foot) to lease the suite. The lease agreement was for a period of twenty-four months, beginning October 1, 2008 and ending on September 30, 2010.

During the term of the lease, Stovall also expanded into and occupied seven additional suites within the premises. Stovall first expanded into suite 217 beginning December 15, 2008 and then suites 307 and 309 beginning November 15, 2009. Although a written lease agreement that covered suites 201, 217, 307, and 309 was prepared, it was not signed by the parties. Stovall also moved into suites 311 and 312 beginning February 1, 2010 and suites 305 and 300 beginning March 1, 2010. It is undisputed that the parties did not sign any other lease agreement pertaining to the additional suites Stovall occupied.

The base rental amounts listed for each suite in the unsigned lease agreement reflected that rent for suites 217, 307, and 309 was to be calculated by using the same price of $15.25 per square foot as in the original signed lease agreement. In addition, according to letters of intent signed by firm owner Kimberly Stovall (or on her behalf by her representative), the firm sought to lease suites 311, 312, 305, and 300 for that same price.

After Stovall began using suite 217 in December 2008, Stovall paid HFC monthly rent of $3,442.69 from December 2008 through April 2010, which was the total monthly rent for suites 201 and 217. The memo line on the checks submitted by Stovall for payment during that time indicated the payment was for "Sts 201 & 217." And in May, June, and July of 2010, Stovall made three payments of $9,224.57, which was the approximate monthly amount for leasing all of

the suites. According to HFC, however, additional rent was due from December 2009 through April 2010 based on the timing of Stovall's use of suites 307, 309, 311, 312, 305, and 300.

Stovall vacated the premises without notice to HFC in early August 2010, nearly two months before the expiration of the lease agreement. Stovall did not pay any amount to cover the rent for August and September 2010 or the additional amounts HFC requested for unpaid rent from December 2009 through April 2010. Stovall also did not respond to a September 14, 2010 letter HFC sent to Kimberly Stovall demanding payment for the unpaid rent.

Two months later, HFC filed this lawsuit to recover unpaid rent in the amount of $37,943.77 and reasonable attorney's fees. HFC alleged Stovall breached the agreements to pay rent for all the suites Stovall occupied. Stovall generally denied the allegations and asserted various affirmative defenses, including the statute of frauds. Stovall also filed a counterclaim against HFC, alleging violations of the Deceptive Trade Practices and Consumer Protection Act (DTPA).

Stovall moved for summary judgment on HFC's claim for unpaid rent, arguing it was entitled to summary judgment because it paid all rents owed under the only signed written lease agreement. Stovall also argued that the unsigned lease agreement for the additional suites was unenforceable under the statute of frauds. It further claimed that the amounts paid in May, June, and July of 2010, did not represent payment of rent for the additional suites; rather, the payments were monies owed for a security deposit. Stovall supported its summary-judgment motion with the signed lease agreement for suite 201 and the unsigned lease agreement. Stovall also attached the affidavit of its business manager, Lesa Jewell, in which she testified that only one executed lease agreement existed between the parties (for suite 201) and no signed lease agreement existed

for any of the additional suites. She further stated that Stovall had paid "all rents due and owing for its occupancy of [the] suites."

HFC responded and also filed a motion for partial summary judgment and amended motion on its claim for unpaid rent. HFC argued (1) the undisputed facts established that an agreement existed between the parties showing Stovall agreed to lease all suites at issue through September 30, 2010 for $15.25 per square foot and (2) Stovall breached the agreement by failing to pay the rent due. HFC also maintained the statute of frauds did not operate to preclude HFC's recovery of the unpaid rent. HFC supported its motion with the signed lease agreement, the letters of intent to lease suites 311, 312, 305, and 300 signed by Kimberly Stovall, and excerpts from the depositions of Kimberly Stovall, Jewell, and Kay Wilbanks, who was Kimberly's assistant. HFC also relied on three affidavits it attached as summary-judgment evidence—the affidavits of Kenny Barnes, the facilities manager for the property, Glenda Liegman, a Vice President and Senior Accountant for HFC, and Bill Lamkin, the commercial property manager for the property. The affidavits included various attachments, including e-mail communications with Stovall representatives and copies of checks paid by Stovall. Attached to Lamkin's affidavit was a June 11, 2010 letter from Lamkin to Kimberly Stovall, notifying her of delinquent rent for June in the amount of $9,224.57, and copy of a Stovall check dated June 18, 2010 for that amount, referencing a June 1, 2010 "Bill." He testified that the requested amount was for rental of all the suites the firm occupied.

Stovall objected to the affidavits of Barnes, Liegman, and Lamkin in its response to HFC's motion and amended motion. Two of the grounds were that "[t]he Affidavits contain inadmissible hearsay" and the "Affidavits are from interested fact witnesses." Stovall also objected to the "exhibits attached to each of the said Affidavits and to [HFC's] Motions" because

- 4 -

the exhibits are "irrelevant, contain hearsay, are unauthenticated documents and are not competent summary judgment proof." Stovall responded to HFC's motion by arguing that other than "mere conclusions, speculation, and hearsay, [HFC] has offered no proper, admissible summary judgment evidence to support its alleged claim."

The trial court denied Stovall's motion for summary judgment and granted HFC's motion and amended motion with an award of $25,136.83 for unpaid rent. The trial court also overruled Stovall's objections to HFC's summary-judgment evidence. The trial court signed an order on October 28, 2011, which stated that the case would proceed on Stovall's DTPA counterclaim and HFC's claim for attorney's fees. The trial court later granted summary judgment in favor of HFC on Stovall's counterclaim. After a bench trial on the issue of attorney's fees, the trial court awarded HFC $35,000 in attorney's fees for representation in the trial court plus additional fees for successful representation on appeal. The trial court incorporated its rulings in a final judgment signed February 16, 2012.

Stovall appeals that judgment, challenging the trial court's summary judgment rendered on HFC's claim for unpaid rent (Issue One) and award of attorney's fees (Issue Two). Stovall does not challenge the trial court's denial of its summary-judgment motion or the decisions related to its DTPA counterclaim.

## DISCUSSION

In its first issue, Stovall contends the trial court erred in granting HFC's motion for summary judgment, which resulted in HFC's recovery of unpaid rent. Stovall claims the trial court relied upon inadmissible affidavits as evidence of an unenforceable oral contract for the lease of real property and HFC did not establish its entitlement to summary judgment on its claim as a matter of law.

**Standard of Review**

We review de novo the trial court's summary judgment. *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011); *Mid-Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). When we review a summary judgment granted in favor of a plaintiff, we determine whether the plaintiff established every element of its claim as a matter of law. *Ohio Cas. Ins. Co. v. Time Warner Entm't Co., L.P.*, 244 S.W.3d 885, 888 (Tex. App.—Dallas 2008, pet. denied). To defeat a plaintiff's cause of action on a traditional motion for summary judgment, the defendant must either "conclusively negate an element of the plaintiff's claim or conclusively establish every element of an affirmative defense." *Id.* A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Holloway v. Dekkers*, 380 S.W.3d 315, 320 (Tex. App.—Dallas 2012, no pet.). The defendant, however, is not required to respond with evidence if deficiencies in the plaintiff's own proof or legal theories will defeat the movant's right to judgment as a matter of law. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994). In deciding whether a disputed material fact issue exists precluding summary judgment, we must take evidence favorable to the nonmovant as true, and we must indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Sysco Food Servs.*, 890 S.W.2d at 800. When, as here, the trial court's order granting summary judgment does not specify the basis for the ruling, we will affirm the summary judgment if any of the theories presented to the trial court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

**Admissibility of HFC's Summary-Judgment Affidavits**

We begin with Stovall's contentions related to HFC's summary-judgment evidence. Stovall argues the affidavits HFC attached as summary-judgment evidence should not have been considered as a basis for granting summary judgment in favor of HFC because the affidavits are inadmissible as hearsay for which there is no exception. Although Stovall lodged objections to three affidavits and various attachments submitted by HFC in the trial court, the hearsay contention Stovall raises on appeal relates only to the affidavits of Barnes and Liegman and does not appear to extend to any of the documents attached to the affidavits.

Both Barnes and Liegman testified to their personal dealings with Stovall, which included communications related to the firm's desire to occupy additional suites in the building because the firm needed extra space and the timing of the firm's possession of the additional suites within the building. They testified to the dates Stovall took possession of each suite and the square footage of the suite. Both also made statements that as Stovall expanded into the other suites, the firm agreed to pay rent for that suite at a certain price, which was based on a price of $15.25 per square foot, and that Stovall agreed to lease each additional suite through September 30, 2010. Liegman testified that at the time she left her employment with HFC in February 2010, there was an agreement between HFC and Stovall that "upon renewal of their lease at the end of September, 2010, a new lease would be prepared to incorporate all the Suites which they intended to occupy." She further stated that Stovall "agreed to pay rent for the Suites which it had occupied."

Stovall complains that "the declarants mention several times that 'Stovall and Associates agreed to pay rent . . .' for a specific suite or amount of time." Stovall also complains about this statement in Barnes's affidavit: "Bill Lamkin . . . notified Stovall & Associates, P.C. that

effective May, 2010, HFC would accept $9,224.57 per month as their monthly rent for Suites 201, 217, 300, 305, 307, 309, 311 and 312." Stovall claims these statements constitute hearsay because they are being offered to prove that it "did indeed orally agree to pay rent on suites that were not included in the original lease." It further maintains that statements regarding Stovall's agreement to pay rent do not constitute admissions by a party opponent.

HFC argues that Stovall waived these complaints to the Barnes and Liegman affidavits by failing to present the trial court with specific objections identifying the particular statements, which were the subject of its hearsay objection. We agree with HFC.

To constitute competent summary-judgment evidence, an affidavit must be based on personal knowledge and set forth facts as would be admissible in evidence. TEX. R. CIV. P. 166a(f). Thus, an affidavit containing hearsay is objectionable and does not support a summary-judgment motion if proper objection is made. *See Querner Truck Lines, Inc. v. Alta Verde Indus., Inc.*, 747 S.W.2d 464, 468 (Tex. App.—San Antonio 1988, no writ); *see also* TEX. R. EVID. 801(d) (defining hearsay). Inadmissible hearsay evidence admitted without objection, however, shall not be denied probative value merely because it is hearsay. *See Pickens v. Pickens*, 62 S.W.3d 212, 216 n.2 (Tex. App.—Dallas 2001, pet. denied) (citing TEX. R. EVID. 802); *Dolenz v. A.B.*, 742 S.W.2d 82, 83–84 n.2 (Tex. App.—Dallas 1987, writ denied); *see also Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230, 234 (Tex. 1962) (unchallenged deficiencies can support affirmance of summary judgment).

An objection that an affidavit contains hearsay is an objection to a defect in the form of the affidavit. *S & I Mgmt., Inc. v. Choi*, 331 S.W.3d 849, 855 (Tex. App.—Dallas 2011, no pet.). Defects in the form of affidavits are not grounds for reversal unless specifically objected to by the opposing party with the opportunity but refusal to amend. TEX. R. CIV. P. 166a(f). An

objection is sufficiently specific if it makes the trial court aware of the precise nature of the complaint such that it can make an informed ruling. TEX. R. APP. P. 33.1(a)(1)(A); TEX. R. EVID. 103(a)(1). If any part of a piece of evidence is admissible, a blanket hearsay objection that does not identify which parts contain hearsay is not enough; rather, the objecting party must make specific objections to each component part of a particular piece of evidence to preserve error on appeal. *See Flores v. City of Liberty*, 318 S.W.3d 551, 560 (Tex. App.—Beaumont 2010, no pet.); *see also Speier v. Webster College*, 616 S.W.2d 617, 619 (Tex. 1981) ("'A general objection to a unit of evidence as a whole, . . . which does not point out specifically the portion objected to, is properly overruled if any part of it is admissible.'") (quoting *Brown & Root, Inc. v. Haddad*, 180 S.W.2d 339, 341 (Tex. 1944)). Absent a specific objection, the complaining party waives any argument to the improper admission or consideration of the evidence. *Speier*, 616 S.W.2d at 619.

As part of its response to HFC's motion and amended motion, Stovall generally objected to the three affidavits ("as well as the exhibits attached thereto") as a whole because: "[t]he Affidavits contain inadmissible hearsay" and "[t]hese Affidavit[s] contain nothing but hearsay on top of hearsay . . . ." Stovall did not direct the trial court's attention to any specific statements contained in the affidavits that it considered problematic, such as the statements it complains about on appeal, or explain why any of the statements were hearsay. Without greater specificity, the trial court was not given sufficient information to make an informed ruling nor did HFC have an opportunity to correct the defect.

Our examination of the affidavits also shows that some portions of the affidavits certainly were admissible. For example, both Barnes and Liegman testified to the dates Stovall took possession of each additional suite, which were facts stipulated to by the parties. Thus,

even assuming Stovall is correct that the complained-of statements are inadmissible as hearsay and no exception applies, because portions of the affidavits were admissible, Stovall was required to specifically object to the statements that were allegedly inadmissible. *See id.* Because Stovall failed to do so, we conclude Stovall's hearsay complaints are waived and the trial court properly considered these affidavits.

**HFC's Entitlement to Summary Judgment As A Matter of Law**

Before we address whether HFC is entitled to summary judgment, we note that the complaints Stovall raises on appeal relate solely to the unpaid rent awarded to HFC for the additional suites Stovall occupied that were beyond what was in the original lease agreement. It is undisputed that the parties signed one lease agreement, in which Stovall agreed to lease suite 201 for $2,135 per month through September 30, 2010. Stovall vacated the property in early August 2010 and did not pay the rent owed for that suite for the remaining two months. The record shows that the trial court awarded HFC the "[r]ent due for Suite 201" for August and September 2010, which was $4,270 ($2,135 + $2,135). Stovall does not appear to challenge this portion of HFC's award.

It also is undisputed that Stovall expanded into and occupied seven additional suites at various times beginning in December 2008. Those suites were suites 217, 307, 309, 311, 312, 305, and 300 (in order of when Stovall took possession). HFC alleged a series of oral agreements that form the basis of its request for unpaid rent on those additional suites. The trial court granted summary judgment for HFC on its unpaid rent claim for those seven suites and awarded HFC $19,494.63, the "Total rent due" for the seven suites from December 2009 through April 2010. The trial court also awarded HFC a prorated amount of $1,372.20 for rental of those suites for six days in August 2010.

To prevail on its claim for unpaid rent for the additional suites, HFC must prove (1) the existence of a valid contract; (2) its performance or tendered performance; (3) Stovall's breach of the contract; and (4) damages as a result of the breach. *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 882 (Tex. App.—Dallas 2007, no pet.); *see also Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 299 (Tex. App.—Dallas 2009, no pet.) ("A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform.").

Stovall argues the trial court erred in granting summary judgment on HFC's claim for unpaid rent. It attacks the first element of HFC's claim—the existence of a valid contract—and argues any oral contract(s) to lease and pay rent on the additional suites as alleged by HFC are unenforceable under the statute of frauds. Stovall also maintains there are issues of fact related to the interpretation of any agreements on the rental of additional suites not listed in the signed lease agreement.

**Statute of Frauds**

The statute of frauds concerns problems of proof and exists to prevent fraud and perjury in certain kinds of transactions by requiring agreements to be set out in writing and signed by the parties. *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001); RESTATEMENT (SECOND) OF CONTRACTS § 131 cmt. c (1981). The statute of frauds is an affirmative defense in a breach of contract suit and renders a contract that falls within its purview unenforceable. *See* TEX. R. CIV. P. 94; TEX. BUS. & COM. CODE ANN. § 26.01(a) (West 2009); *see also S & I Mgmt.*, 331 S.W.3d at 854.

The statute of frauds encompasses leases of real estate for a term longer than one year and agreements that are not to be performed within one year from the date of making the agreement. TEX. BUS. & COM. CODE ANN. § 26.01(b)(5), (6). The statute of frauds renders these

types of agreements unenforceable unless the agreement is in writing and signed by the person to be charged. *See id.* § 26.01(a). The question of whether an agreement falls within the statute of frauds is one of law. *See Bratcher v. Dozier*, 346 S.W.2d 795, 796 (Tex. 1961); *Biko v. Siemens Corp.*, 246 S.W.3d 148, 159 (Tex. App.—Dallas 2007, pet. denied). Yet the question of whether an exception to the statute of frauds applies is generally a question of fact. *See Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 705 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

HFC argues that the agreements to lease the additional suites do not fall within the statute of frauds because they are for lease terms of less than one year and could be performed within one year of the dates the agreements were made. HFC also argues the series of documents, including the e-mails between representatives of the parties, HFC submitted as summary-judgment evidence were sufficient to constitute an agreement in writing to satisfy the statute of frauds and support enforcement of the agreements to pay rent on the additional suites. HFC further maintains that even if the statute of frauds applies, Stovall's partial performance rendered the defense unavailable to Stovall.

We agree with HFC that the agreements to lease and pay rent on six of the suites, specifically, suites 307, 309, 311, 312, 305, and 300, do not fall within the statute of frauds because they do not involve the lease of real estate for more than one year or could be performed within one year from the date the agreements were made. HFC alleged agreements with Stovall to pay rent on the additional suites. The agreements were effective on various dates based on the timing of when Stovall took possession of the suites. The record shows the parties stipulated to the dates that Stovall expanded into the additional suites: The stipulated facts show that Stovall began using suites 307 and 309 on November 15, 2009, suites 311 and 312 on February 1, 2010, and suites 305 and 300 on March 1, 2010. HFC's claim for unpaid rent on those suites

corresponded to the dates Stovall began using the suites. For example, HFC alleged as of December 2009, Stovall was occupying suites 201, 217, 307, and 309 but that Stovall paid rent only for suites 201 and 217. The trial court awarded unpaid rent for suites 307 and 309 for five months, beginning in December 2009 and ending April 2010, plus six days in August 2010.

Barnes and Liegman testified that the agreement to lease each suite was effective on the date Stovall took possession of the suite and Stovall agreed to lease the suites under the same terms and price per square foot through September 30, 2010. Liegman also testified that "upon renewal of [Stovall's] lease at the end of September 2010," a new lease would be prepared that incorporated all the suites Stovall intended to occupy.

To measure a contract's duration for statute-of-frauds purposes, the "court simply compares the date of the agreement to the date when the performance under the agreement is to be completed." *Young v. Ward*, 917 S.W.2d 506, 508 (Tex. App.—Waco 1996, no writ). And if there is a year or more between those two reference points, then a writing is required to render the agreement enforceable. *Id.* Here, there is less than a year between the beginning dates for each expansion to the end of September 2010. The longest agreement (for suites 307 and 309) was from a period of November 15, 2009 through September 30, 2010, which is plainly less than one year.

Stovall, as the party pleading the statute of frauds, bore the burden of establishing its applicability; that is, the agreements to lease the additional suites were for more than one year or could not be performed within a year of the date of making the agreements. *See Kalmus v. Oliver*, 390 S.W.3d 586, 590 (Tex. App.—Dallas 2012, no pet.). Stovall moved for traditional summary judgment on its statute-of-frauds defense. It argued that the unsigned lease agreement was unenforceable under the statute of frauds because performance was for more than one year

- 13 -

after the commencement of the lease. It supported its motion with the unsigned lease agreement, which had been prepared by HFC, and the affidavit of Jewell in which she testified there was no signed lease agreement for any suite other than suite 201. The unsigned lease agreement also was attached to Liegman's affidavit and submitted as part of HFC's summary-judgment evidence.

The unsigned lease agreement pertained to suites 201, 217, 307, and 309. The agreement provided that the lease term was for a period of twenty-four months and listed three "Commencement Date(s)" corresponding to when Stovall moved into suites 201, 217, 307, and 309. The lease term did not specify that the 24-month lease term began from each commencement date; rather, it was for "a period" of twenty-four months that could only logically begin when Stovall first took possession of its first suite, which was suite 201, effective October 1, 2008. Further, the trial court did not treat each expansion as beginning a new 24-month term. It treated each expansion as a month-to-month lease and awarded damages accordingly. Liegman testified that for each suite Stovall took possession of and occupied beyond suite 201, the agreement was to lease the space through the end of September 30, 2010.

Other than the documents described above, Stovall presented no additional summary-judgment evidence in response to HFC's motion and amended motion; Stovall simply argued that because HFC did not produce "any proper, admissible summary judgment evidence to prove the claimed proposition," HFC is not entitled to summary judgment as a matter of law. We conclude Stovall did not meet its burden to show the agreements to lease additional suites as alleged by HFC were unenforceable because they were for more than one year or could not be performed within one year from the date of making the agreement. Thus, the oral agreements to lease suites 307, 309, 311, 312, 305, and 300 are not barred by the statute of frauds.

The oral agreement to lease suite 217, however, requires a different analysis because the stipulated facts show that any agreement to lease suite 217 was for more than one year and therefore is within the statute of frauds. TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(5), (6). There is no dispute that Stovall occupied suite 217 and paid rent for the suite from December 2008 through July 2010. HFC's summary-judgment evidence includes check stubs showing Stovall's payment for rent on "Sts 201 & 217." And Stovall admitted in its opening brief that it "had paid rent for the additional Suite 217." But HFC also alleged that Stovall owed rent for all suites, including suite 217, in August and September 2010, and the trial court awarded recovery of unpaid rent for the suites other than suite 201 through August 6, 2010. We therefore must determine whether the statute of frauds precludes recovery of unpaid rent for suite 217 for the six days in August 2010.

HFC argues that Stovall's partial performance renders the statute-of-frauds defense unavailable to Stovall. Partial performance has been recognized as an equity-based exception to the statute of frauds. *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 553 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.). Under this exception, "an oral agreement that does not satisfy the traditional statute of frauds but that has been partially performed may be enforced if denying enforcement would itself amount to a fraud." *Id.* at 554; *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied). The actions asserted to constitute partial performance must be "unequivocally referable" to the alleged oral agreement and corroborate the existence of that agreement; they "must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced." *Breezevale*, 82 S.W.3d at 439–40.

Citing *Hooks v. Bridgewater*, 229 S.W. 1114, 1116 (Tex. 1921), Stovall argues that to establish partial performance, HFC must show: (1) payment of consideration by the purchaser/lessee; (2) possession of the property by the purchaser/lessee; and (3) permanent and valuable improvements by the purchaser/lessee with the consent of the landlord, or without such improvements, the presence of other facts as would make the transaction a fraud upon the purchaser/lessee if it were not enforced. We agree this test applies in the context of a purchaser or *lessee* attempting to enforce an oral agreement pertaining to the sale or lease of real property. *See id.*; *Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.*, 48 S.W.3d 865, 882–83 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Carmack v. Beltway Dev. Co.*, 701 S.W.2d 37, 40 (Tex. App.—Dallas 1985, no writ). But the case before us involves a *lessor's* attempt to enforce an oral agreement for lease of real estate. In such circumstances, the partial performance exception to the statute of frauds has been applied to prevent application of the statute when the lessor fully performs and the lessee knowingly accepts the benefits of the oral agreement to lease and partly performs. *See, e.g.*, *Carmack*, 701 S.W.2d at 40 (seller/lessor may be entitled to enforce oral agreement if it shows "performance of the contract by delivery of possession to the purchaser and a detrimental change of position for which the [vendor/lessor] has no adequate remedy."); *see also Newsom v. Newsom*, 378 S.W.2d 842, 844–45 (Tex. 1964) (lessor permitted to recover rent stipulated in oral lease for more than one year); *Tinsley v. Metzler*, 44 S.W.2d 820, 822 (Tex. Civ. App.—El Paso 1931, writ dism'd w.o.j.) ("[W]here the tenant has gone into possession and paid rent, this is such part performance as takes the transaction out of the operation of the statute [of frauds] and renders it unavailable as a defense" in an action for unpaid rent.).

Here, HFC permitted Stovall to occupy its property, and Stovall paid rent for the majority of that time. Specifically, the summary-judgment evidence shows Stovall occupied suite 217 for over a year and a half and paid full rent on the suite on a monthly basis until August 2010. HFC accepted Stovall's possession of the suite (as evidenced by e-mail communications attached to Barnes's affidavit showing HFC performed maintenance services, such as temperature and pest control, related to suite 217) and accepted the rent payments. Liegman testified that a written lease agreement was prepared at one point to cover suite 217 (as well as suites 201, 307, and 309), but that "as a result of Stovall's uncertainty as to when they wished to take possession of Suites 307 and 309, execution of this lease was delayed." She also stated that when the original lease agreement expired in September 2010, a new lease would be prepared to incorporate all suites occupied by Stovall. These acts are sufficient to corroborate the existence of an agreement to lease 217 and could not have been performed with any purpose except to perform an agreement to lease and pay rent for suite 217. *See Wukasch v. Hoover*, 247 S.W.2d 593, 595 (Tex. Civ. App.—Austin 1952, no writ). We therefore conclude Stovall's partial performance with respect to an agreement to lease and pay rent for suite 217 is supported by the summary-judgment record, which removes the agreement from the statute of frauds.[2]

### Claimed Issues of Fact

Because the statute of frauds does not bar the oral agreements to lease suites 307, 309, 311, 312, 305, and 300 and the statute is unavailable due to partial performance related to the agreement to lease suite 217, we next consider whether fact issues remain precluding summary judgment for HFC. Stovall argues HFC failed to establish its entitlement to judgment as a matter

---

[2]We note that the party successful in removing an oral agreement from the statute of frauds because of partial performance would be entitled to only reliance damages. *See Breezevale*, 82 S.W.3d at 441. Stovall did not attack the measure of damages, and we therefore decline to address whether HFC suffered reliance damages.

of law on its claim for unpaid rent because "genuine issues of material fact still existed on several issues." Stovall first contends that the affidavit testimony of Barnes and Liegman that alleged oral agreements entered into by a Stovall employee raises a fact issue because Stovall disputes that any oral agreement to pay additional rent took place. Stovall further maintains there is a fact issue on "the purpose and origin of the increased payments" by Stovall to HFC in May, June, and July of 2010. It claims that although Barnes stated the increased payment was to pay rent on the additional suites, Stovall argues that its "pleadings [alleged] that these increased payments were intended to satisfy a security deposit."

The affidavits and other evidence HFC submitted as summary-judgment evidence provided relevant factual details underlying each element of its claim. Barnes and Liegman testified to the executed lease agreement and identified each suite added to Stovall's leased premises, including the dates when Stovall took possession of each additional suite, the rent due for each suite based on the price per square footage, and the duration of the agreements. Liegman testified to Stovall's agreement to lease and pay rent as it took possession of the suites, Stovall's failure to pay the rent due, and the amount of money owed in unpaid rent. Similarly, Lamkin testified to a period of unpaid rent and the amount. The e-mail communications identified Kay Wilbanks as the Stovall representative who requested the additional suites, and the letters of intent signed by Kimberly Stovall (or her representative) show the terms Stovall sought to lease certain suites. Thus, HFC established a series of oral agreements to lease the seven additional suites, Stovall took possession of the suites and occupied the suites until August 2010, Stovall breached the agreements by failing to pay rent on the additional suites, and HFC suffered damages as a result of the nonpayment.

To defeat HFC's claim for unpaid rent on a traditional motion for summary judgment, Stovall had the burden to come forward with evidence to negate an element of the HFC's claim. *See Ohio Cas. Ins. Co.*, 244 S.W.3d at 888.   In its response to HFC's motion and amended motion, however, Stovall did not file any controverting evidence.   Instead, it responded by filing objections to HFC's summary-judgment evidence, which were overruled.   And in this Court, Stovall does not direct our attention to any summary-judgment evidence to support its contention that any oral agreements to pay additional rent did not take place or the purpose and origin of the increased payments in May, June, and July 2010.   On the latter contention, it merely cites "CR xx."

In its reply brief, Stovall argues there are "fact issues as to whether Stovall agreed to lease or to pay rent for the office suites for which there were no written leases" because the affidavits of Barnes, Liegman, and Lamkin do not meet the requirements for affidavits from interested witnesses.   Stovall clarifies that the point of its argument "is not that these affidavits were not admissible, but only that they failed to establish conclusively that Stovall agreed to lease or to pay rent for the additional suites."

The rules of appellate procedure provide that an appellant "may file a reply brief addressing any matter in the appellee's brief."   TEX. R. APP. P. 38.3.   But an issue raised for the first time in a reply brief is ordinarily waived and may not be considered by this Court.   *See Collin Cnty. v. Hixon Family P'ship, Ltd.*, 365 S.W.3d 860, 877–78 (Tex. App.—Dallas 2012, pet. denied); *Dallas Cnty. v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.—Dallas 2006, pet. denied).

Stovall nevertheless contends this argument is a subsidiary issue covered under its general assertion that "genuine issues of material fact still existed on several issues."   (citing

- 19 -

TEX. R. APP. P. 38.1(f)).  It asserts that this argument "raises this Court's authority and obligation to scrutinize the summary judgment evidence to determine whether [HFC] conclusively established its entitlement to judgment as a matter of law."  Counsel for Stovall also stated at oral argument that this issue was embraced in the contention raised in Stovall's opening brief that the trial court erred when it relied on inadmissible affidavits.

Although related to Stovall's challenge of the trial court's grant of summary judgment, the argument Stovall raises in the reply brief is wholly different from arguments raised in its opening brief, in which Stovall only challenged the summary-judgment evidence on hearsay grounds and asserted issues of fact remained "even if" the affidavits are admissible.  Stovall's opening brief does not even mention the interested-witness ground—an objection it raised in the trial court—much less make any arguments that the affidavits raise fact issues because they are from interested witnesses.  That Stovall could have but did not make such an argument in its opening brief does not allow it to do so for the first time in its reply brief.  *See López v. Montemayor*, 131 S.W.3d 54, 61 (Tex. App.—San Antonio 2003, pet. denied) ("A reply brief is not intended to allow an appellant to raise new issues.").  This argument is not properly before us.

After reviewing the summary-judgment record, we conclude HFC met its summary-judgment burden showing it was entitled to summary judgment as a matter of law on its claim for unpaid rent and that no genuine issues of material fact exist as to the elements of HFC's breach of contract claim.  TEX. R. CIV. P. 166a(c).  We overrule Stovall's first issue.

### Trial Court's Award of Attorney's Fees to HFC

In its second issue, Stovall contends the trial court erred in awarding "unreasonable" attorney's fees to HFC because no enforceable contract existed upon which HFC could sue for

breach. We generally review a trial court's decision to award attorney's fees for an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

Section 38.001 of the Texas Civil Practice and Remedies Code permits the recovery of reasonable attorney's fees in a suit on an oral or written contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008). To recover attorney's fees in a suit based on a contract, a party must prevail on the cause of action and recover damages. *Ochoa v. Craig*, 262 S.W.3d 29, 33 (Tex. App.—Dallas 2008, pet. denied). While the trial court has the discretion to set the amount of an attorney's fees, it has no discretion to deny the fees if they are proper under section 38.001. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009); *RM Crowe Prop. Servs. Co., L.P. v. Strategic Energy, L.L.C.*, 348 S.W.3d 444, 452 (Tex. App.—Dallas 2011, no pet.); *Hassell Constr. Co. v. Stature Commercial Co.*, 162 S.W.3d 664, 668 (Tex. App.—Houston [14th Dist.] 2005, no pet.). It is presumed that usual and customary attorney's fees are reasonable, but this presumption may be rebutted. *Hassell Constr. Co.*, 162 S.W.3d at 668.

By rendering summary judgment in favor of HFC, the trial court rejected Stovall's statute-of-frauds defense and determined that in addition to the signed lease, there were oral agreements to lease the additional suites. HFC was awarded unpaid rent in the amount of $25,136.83 for Stovall's breach of those agreements. Because HFC prevailed on its claim for unpaid rent, the trial court did not err in awarding attorney's fees for breach of contract. *See Ochoa*, 262 S.W.3d at 33.

The issue of the amount of attorney's fees was tried to the bench. HFC's attorney submitted his resume, the September 14, 2010 presentment letter to Stovall, and the billing records for the representation. He sought $38,250 in fees through trial and testified the fees sought were reasonable based on the time and labor involved, the skill required, the customary

fee charged, the amount involved and the results, and his experience, reputation, and ability. Stovall did not cross-examine HFC's attorney; rather, it objected that there was no basis for attorney's fees because "there ha[d] been no contract proven." The trial court reduced HFC's request "slightly" and awarded $35,000 in attorney's fees through trial plus amounts if HFC prevailed on appeal. The trial court acknowledged that it was "awfully loath" to award attorney's fees in excess of the actual damages, but it stated, "the record in this matter overall will reflect that it was seriously contested, [and] that there was a certain amount of dilatory and obstructive behavior on the part of [Stovall]."

Without citation to any authority, Stovall argues the award of attorney's fees, which was "in excess of the actual judgment is not customary or reasonable for a breach of contract case." We disagree, and after reviewing the record, we conclude the trial court did not abuse its discretion in awarding $35,000 in attorney's fees to HFC. We overrule Stovall's second issue.

Based on our resolution of Stovall's issues, we affirm the trial court's judgment.

/David Lewis/
DAVID LEWIS
JUSTICE

120303F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

**JUDGMENT**

STOVALL & ASSOCIATES, P.C.,
Appellant

No. 05-12-00303-CV      V.

HIBBS FINANCIAL CENTER, LTD,
Appellee

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC10-15189.
Opinion delivered by Justice Lewis.
Justice FitzGerald participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**. It is **ORDERED** that appellee Hibbs Financial Center, Ltd. recover its costs of this appeal from appellant Stovall and Associates, P.C.

Judgment entered this 13th day of August, 2013.

/David Lewis/
DAVID LEWIS
JUSTICE

- 23 -