**Opinion issued December 28, 2023**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00188-CV

_____

**ROBERT ARISPE AND KASIE O'DELL, Appellants**

**V.**

**MELISA VELAZQUEZ AND FRANCISCO VELAZQUEZ, Appellees**

---

**On Appeal from the County Civil Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 1198118**

---

## MEMORANDUM OPINION

Appellants Robert Arispe and Kasie O'Dell, acting pro se, appeal the trial court's final judgment ordering that their two pit bull terriers be humanely destroyed because of Appellants' failure to comply with the State's "dangerous dog" statute. Although it is difficult to ascertain the issues Appellants raise on

appeal, it appears Appellants (1) complain about the admission of unidentified hearsay testimony, and (2) argue that the evidence was legally insufficient to support the trial court's verdict.

Because the hearsay objection was not preserved and the evidence supports the trial court's judgment, we affirm.

## Background

Robert Arispe and Kasie O'Dell are neighbors of Appellees Melissa Velazquez and her father, Francisco Velazquez, in Katy, Texas. Appellants owned at least three pit bulls, two of which are the subject of the present appeal.[1]

On May 6, 2022, Appellees filed a "Report of Unprovoked Attack or Acts by Dog to be Declared Dangerous" in Harris County Justice Court.[2] The petition complained of three incidents involving two pit bull terriers in 2020 and 2022.[3] On July 6, 2022, after a hearing pursuant to Section 822.0423 of the Texas Health and Safety Code, the Justice of the Peace found the dogs to be "dangerous dogs" as defined by Section 822.041(2) of the Health and Safety Code. The trial court's

---

[1] Some documents in the clerk's record identify both Appellants as the dogs' owners. Some identify only Arispe as the owner, but at trial, O'Dell testified also testified she owned the dogs. We refer to Appellants as co-owners of the dogs.

[2] The Justice Court suit was styled Cause No. 225200154147, *Melisa Velazquez and Francisco Velazquez v. White Pitbulls with Black Cowspots*, In the Justice Court of Harris County, Texas, Precinct 5, Place 2.

[3] The May 6, 2022 "Report of Unprovoked Attack or Acts by a Dog to be Declared Dangerous," filed in Justice Court, complained of incidents involving the dogs on February 23, 2020, December 18, 2020, and April 27, 2022.

dangerous dog finding required Appellants to comply with certain requirements of Chapter 822, Subchapter D, of the Texas Health and Safety Code and Section 8 of the Harris County Animal Regulations. Among other things, Appellants were required to "restrain the dangerous dog at all times on a leash in the immediate control of a person or in a secure enclosure."[4]

On November 9, 2022, Harris County Advanced Animal Control Officer Allie Post filed a "Request for Hearing on Whether Owner of Dangerous Dog has Failed to Comply with Requirements" in the Justice Court. According to the request, Harris County Animal Control

> received a call reporting "two loose dogs aggressively charging and had just killed complainant['s] dog. Upon [Post's] arrival, the deputy had made contact with the owner of the dangerous dogs and confined them. However as the deputy and [Post] were speaking to the owner, the dogs broke out of the house and began charging and lunging[,] causing the deputy to unholster his taser and prep[are] to engage.

In response to Officer Post's request, the Justice Court conducted a hearing to determine whether Appellants had failed to comply with the "dangerous dog" requirements.[5] After the hearing, the Justice of the Peace signed an order on December 20, 2022 providing in part:

> [T]he Court FINDS that the dog[s] were declared to be a [sic] dangerous dogs on 07/06/2022, and that more than 30 days have elapsed and the owner, Robert Arispe has <u>failed to comply with the</u>

---

[4] *See* TEX. HEALTH & SAFETY CODE § 822.042(a)(2).

[5] The record does not include a transcript of the Justice Court hearing.

3

> requirements of owning a dangerous dog by fail[ing] to comply with the requirements of owning a dangerous dog by failing to secure the dog in a kennel, where they escaped multiple times and one time resulting in attacking and killing a neighbor['s] pet dog.
>
> It is therefore ORDERED that Veterinary Public Health shall seize the dogs if not already impounded and keep the dogs in secure and humane conditions; and that on or after the 11th day from the date the dogs are seized or today's date, whichever is later, Veterinary Public Health shall humanely destroy the dogs.[6]

(Emphasis in original.) Appellants appealed the trial court's order to Harris County Court at Law No. 4.[7]

### The County Court at Law Trial

A trial was conducted on February 6, 2023 in Harris County Court at Law No. 4. All parties appeared pro se. Five witnesses testified.

### A. Melisa Velazquez

According to Appellee Melisa Velazquez, the first incident with the pit bulls occurred on February 23, 2020, when they broke down her neighbor's fence and also her fence. The pit bulls were "trying to maul" her dog and then the dogs "came at" her. She testified, "[T]he only reason that they didn't bite me or attack me was because my mother was right there holding a steak and trying to push them

---

[6] *See* TEX. HEALTH & SAFETY CODE § 822.042(e) (providing for humane destruction of dangerous dog if owner fails to comply with dangerous dog requirements within certain time).

[7] *See Hayes v. State*, 518 S.W.3d 585, 590 (Tex. App.—Tyler 2017, no pet.) (holding that justice court's order for dog to be destroyed is appealable to county court at law).

away.  So while that was happening, we were screaming and trying to get help.  And my neighbors hear this, so they came in and burst[] through our fence to try to get these dogs away."  Appellees live roughly three houses away but behind Appellants.

Melisa testified that the dogs "did bang at our window.  And both of them were trying—it seemed like they were trying to break it down as they saw my dog  . . . . I saw that it was [] the same dogs and I took pictures of them."  She said she filed a police report about the incident.  Melisa testified that on October 3, 2022 the pit bulls got out of Appellants' yard again.

### B.      Francisco Velazquez

Appellee Francisco Velazquez testified that when he came home from work the day of the first incident, "the dogs were banging the glass of the window.  And then I thought the dog was gonna go through the window."  He got out of his van to yell at the dogs and then they charged him.  "[T]hose dogs, they were not scared.  They were mean dogs."

### C.      Christine Luque

Christine Luque, another neighbor, testified that on November 5, 2022, the dogs "broke down [her] back fence and came into [her] back yard and killed [her] Boston terrier, and [her] gate was locked and shut at the time."[8]  Luque lives across

---

[8]      Luque apparently was a plaintiff in the lower court but is not a party to this appeal.

the street and down the block from Appellants. She said the pit bulls disemboweled her dog, which died at the veterinarian's office. She said that at the time he was attacked, her dog "was doing nothing except for . . . lounging in the sun on a . . . Saturday afternoon" in her backyard. She said the pit bulls' owners have "had multiple, multiple complaints against these dogs and . . . these dogs need to be dealt with and the owner needs to be held accountable."

## D. Allie Post

Animal Control Officer Allie Post testified that she became involved with the pit bulls on November 5, 2022, after Luque's dog was killed. When she arrived, a deputy from the sheriff's office was there and had chased the dogs back to Appellants' house. After talking to O'Dell, Officer Post issued citations based on Appellants' noncompliance with the dangerous dog requirements, "due to dangerous dogs running loose." While Officer Post and the Deputy were there, three pit bulls broke out of a side window of Appellants' house.[9]

Officer Post testified that to have a "secured enclosure" for a dangerous dog "means to take steps that a reasonable person would take to ensure a dog remains on the owner's property, including confining the dog in an enclosure that is capable of preventing the escape or release of the dog. The house alone is not

---

[9] A video of body cam footage made by the Deputy who was with Officer Post was played during the trial, but the recording was not part of the appellate record.

secure for these dogs." Officer Post said she has responded to sixteen calls regarding Appellants' pit bulls.

According to Officer Post, O'Dell's failure to comply with the dangerous dog guidelines "allowed [the dogs] to get out, which allowed them to go into somebody else's backyard and destroyed their dog." She continued, "[T]he reason that the dogs were being human[e]ly euthanized was because she's not being responsible. She's not doing what it takes per the law, the minimum requirements she's not compliant to."

### E. Kasie O'Dell

Kasie O'Dell testified that when the dogs escaped on November 5, 2022, "the cage was not that safe." She said she was not given a fair chance for the cage to be examined to determine it was safe enough to contain the dogs. According to O'Dell, she used zip ties around a chain link enclosure, but the dogs got past it. She has not put the dogs back into the cage since then because she has been "waiting for [Officer Post] to come out there to tell me where the mistakes went wrong to fix it to make sure that these are safe before I put my dogs back in there." She said she has not attempted to fix the enclosure because she has been waiting for an animal control officer "to come out and tell me the proper materials I need to fix it to make it a safe place for these dogs, that way they don't get out and they

won't get hurt."[10] She said she chose not to reconstruct the enclosure after it broke on November 5, 2022 because she is "not a professional with animal control and [does not] want to make a mistake . . . on the enclosure[.]" She said she wants "a professional" to come out and to help her fix it.

O'Dell testified she put burglar bars on a window of her house at the Justice of the Peace's suggestion, because the dogs had escaped through the window. According to O'Dell, the dogs do not always wear a muzzle because one of them does not fit into the muzzle she has for him, but she is looking for a bigger muzzle. And she testified she walks the dogs on a leash. But, she stated, she is not putting them back into the cage "until somebody comes out and helps me do the right thing and make it safe." O'Dell testified the dogs were restrained by a leash at all times, and that they never bit or committed an "unprovoked attacking" of a person.

On February 9, 2023, the County Court issued an order that stated in part:

> Having considered the evidence and arguments, the Court finds that the dog[s] were declared to be a dangerous dogs on 7/6/2022, and that more than 30 days have elapsed and the owner Kasie Eileen Odell [sic] has failed to comply with the requirements of owning a dangerous dog by fail[ing] to comply with the requirements of owning a dangerous dog by failing to secure the dog in a kennel, where they escaped multiple times, and one time resulting in attacking and killing a neighbor['s] pet dog and resulting in bodily injury to a neighbor running from the pit bulls.

---

[10] Officer Post testified that after an enclosure is constructed to contain a dangerous dog, animal control inspects it. However, animal control does not help dog owners construct the enclosure. The animal owners simply get a sheet of paper that gives requirements for enclosures for dangerous dogs.

The order required Veterinary Public Health to "seize the dogs if not already impounded" and to destroy the dogs humanely.[11]

This appeal ensued.

## Discussion

### A. Hearsay

It is difficult to ascertain the nature of Appellants' complaints on appeal. It appears that in their first issue, Appellants argue the trial court erred in admitting hearsay, but they do not identify the specific testimony of which they complain or the reasons the admission of the testimony was erroneous.

#### 1. Standard of Review

We review a trial court's decision to admit evidence for an abuse of discretion. *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011) (citing *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005)). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules and principles. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

---

[11]   Veterinary Public Health is a division of the Harris County Public Health Department. HARRIS COUNTY PUBLIC HEALTH, https://publichealth.harriscountytx.gov/About/Organization/VPH (last visited November 28, 2023).

9

## 2. Analysis

Appellants argue that Appellees' evidence "primarily consist[s] of hearsay statements" but do not identify any particular statement. Appellants also state that they had "concerns about the authenticity and verifiability of information" from social media.[12]

To the extent Appellants complain that the County Court erred in admitting hearsay testimony, the record of the trial lacks a single objection to hearsay evidence or testimony. If not asserted in the trial court, a hearsay objection is waived. *Harrell v. Patel*, 225 S.W.3d 1, 6 (Tex. App.—El Paso 2005, pet. denied) (citing *Campbell v. Salazar*, 960 S.W.2d 719, 723 n.1 (Tex. App.—El Paso 1997, pet. denied)); *see also Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) ("In order to preserve a complaint for appellate review, a party must present to the trial court a timely request, objection or motion, state the specific grounds therefor, and obtain a ruling."); *Mock v. Nat'l Collegiate Student Loan Tr. 2007-4*, No. 01-17-00216-CV, 2018 WL 3352913, at *3 (Tex. App.—Houston [1st Dist.] July 10, 2018, no pet.) (mem. op.) ("To preserve error in a trial court's ruling to admit

---

[12] During the trial, O'Dell stated that "social media . . . is [] not admissible. It's just gossip." To the extent that statement was intended as a hearsay objection, it fails, as she did not object to any specific testimony or evidence and did not get a ruling on it. Moreover, O'Dell invited the County Court to review social media regarding the dogs. She stated, "You read the social media which is not admitted publically [sic] in court and you will be absolutely surprised of their actions that they say and contradict themselves versus what they put on here in court."

evidence, the complaining party must normally make a timely and specific objection and obtain a ruling from the trial court.") (citing TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(1)).[13]

Appellants did not object to any purported admission of hearsay. Thus, the issue is not preserved for our review. We overrule Appellants' first issue.

## B. Legal Sufficiency

With respect to Appellants' second issue, we liberally construe Appellants' argument that there was a "lack of direct evidence," that Appellees did not have "first-hand knowledge of the case," and that there was a lack of "thorough investigation" as a challenge to the legal sufficiency of the evidence. *See Morrill v. Cisek*, 226 S.W.3d 545, 549 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (construing appellant's challenge to trial court's judgment in light of evidence presented at trial as challenge to sufficiency of evidence); *Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc.*, 175 S.W.3d 284, 300 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (construing argument that insufficient evidence supported jury findings on damages as legal sufficiency challenge); *Lua v. Capital Plus Fin., LLC*, 646 S.W.3d 622, 631 n.5 (Tex. App.—Dallas 2022, pet. denied) (noting that

---

[13] *Cf. Stovall & Assocs., P.C. v. Hibbs Fin. Ctr., Ltd.,* 409 S.W.3d 790, 797 (Tex. App.—Dallas 2013, no pet.) ("If any part of a piece of evidence is admissible, a blanket hearsay objection that does not identify which parts contain hearsay is not enough; rather, the objecting party must make specific objections to each component part of a particular piece of evidence to preserve error on appeal.").

because appellants argued there was "no evidence" to support judgment, issues are construed as legal sufficiency challenges).

### 1. Standard of Review

In a legal sufficiency review, we credit all evidence and inferences favorable to the trial court's decision if a reasonable factfinder could, and we disregard all evidence contrary to that decision unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We will sustain a no evidence challenge if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). If the evidence is so weak as to only "create a mere surmise or suspicion of its existence," there is less than a scintilla and is, in effect, no evidence. *King Ranch*, 118 S.W.3d at 751; *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). We may not substitute our judgment for that of the

fact finder if the evidence falls "within the zone of reasonable disagreement." *Morrill*, 226 S.W.3d at 549 (citing *Keller*, 168 S.W.3d at 822).

## 2. The Dangerous Dog Statute

The Texas Health and Safety Code defines a "dangerous dog" as a dog that

(A)     makes an unprovoked attack on a person that causes bodily injury and occurs in a place other than an enclosure in which the dog was being kept and that was reasonably certain to prevent the dog from leaving the enclosure on its own; or

(B)     commits unprovoked acts in a place other than an enclosure in which the dog was being kept and that was reasonably certain to prevent the dog from leaving the enclosure on its own and those acts cause a person to reasonably believe that the dog will attack and cause bodily injury to that person.

TEX. HEALTH & SAFETY CODE § 822.041(2). Within thirty days of learning that a dog has been declared to be a "dangerous dog" under this ordinance, the dog owner must, among other things, "restrain the dangerous dog at all times on a leash in the immediate control of a person or in a secure enclosure." *Id.* § 822.042(a)(2).[14]

If a justice, county, or municipal court finds after notice and hearing that the owner of a dangerous dog has failed to comply with Section (a), "the court shall order the animal control authority to seize the dog and shall issue a warrant authorizing the seizure. The authority shall seize the dog or order its seizure and shall provide for the impoundment of the dog in secure and humane conditions." *Id.* § 822.042(c). If the owner has not complied with subsection (a) before the

---

[14]     *See* TEX. HEALTH & SAFETY CODE § 822.041(4) (defining "secure enclosure").

13

eleventh day after the date when the dog is seized or delivered to the animal control authority, "the court shall order the animal control authority to humanely destroy the dog." *Id.* § 822.042(e).

### 3. Analysis

It is undisputed that Appellants' two pit bulls were declared "dangerous dogs" on July 6, 2022 and that Appellants were ordered by the Justice of the Peace to "restrain the dog at all times on a leash in the immediate control of a person or in a secure enclosure that must be approved by the [Harris County] Veterinary Public Health Division." At trial, during which the trial court had to determine whether Appellants were in compliance with the order, O'Dell conceded she did not keep the dogs in a secure enclosure when they were not on a leash:

> I have not put them back in that cage because Allie Post told me one time go to Home Depot and figure it out. I can't do that, I'm not animal control. I'm not trained. So I have been waiting for her to come out there to tell me where the mistakes went wrong to fix it to make sure that these are safe before I put my dogs back in there.

Asked by the trial court whether she had fixed the enclosure after Officer Post told her she was not in compliance, she stated:

> No, I have not because I have been waiting on an [Animal Control officer] to come out and tell me the proper materials I need to fix it to make it a safe place for these dogs, that way they don't get out and they won't get hurt.

O'Dell testified the dogs are not always muzzled, but she "watch[es] them wherever they go, because [she is] not putting them back in that cage until

14

somebody comes out and helps me do the right thing and make it safe." O'Dell said she chose not to reconstruct the enclosure after it broke on November 5, 2022 because she is "not a professional with animal control and [does not] want to make a mistake . . . on the enclosure[.]"

Appellants do not make a persuasive sufficiency argument. They vaguely point to a "lack of direct evidence," Appellees' absence when the "alleged incident"[15] occurred, Appellees' reliance on evidence from social media platforms, unidentified contradictory statements Appellants claim Appellees made to the County Court and on social media, and on alleged perjury by Appellees.[16] Appellants also allege Animal Control and the police performed "poor investigation[s]" and issued conflicting reports[17] that further call into question Appellees' claims. But Appellants do not cite any testimony or evidence from the trial in support of their argument.[18] Most significantly, Appellants do not refer in their brief to O'Dell's admission during the trial that the dogs are not kept in a

---

[15] It is unclear which incident Appellants refer to, but presumably they refer to the fatal injuries inflicted upon Luque's Boston terrier.

[16] Without providing details, Appellants argue Appellees perjured themselves by "falsely identifying herself and someone else as witnesses."

[17] Appellants do not explain how the investigations by Animal Control and the police were inconsistent. No law enforcement officers testified during the trial.

[18] Pro se litigants are "held to the same standards as licensed attorneys," and they must "properly present [their] case on appeal." *Johnson v. Harris Cnty.*, No. 01-15-01003-CV, 2016 WL 2744943, at *1 (Tex. App.—Houston [1st Dist.] May 10, 2016, pet. dism'd w.o.j.) (mem. op.) (citations omitted).

secure enclosure when not on a leash, in violation of Section 822.042(a)(2) of the Health and Safety Code.

Considering the evidence in the light most favorable to the adverse finding, as we must, and indulging every reasonable inference supporting the trial court's finding, we conclude there is legally sufficient evidence to support the trial court's finding that Appellants violated Section 822.042(a)(2) of the Health and Safety Code. *See Keller*, 168 S.W.3d at 822. We overrule Appellants' second issue.

### Conclusion

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Chief Justice Adams and Justices Landau and Rivas-Molloy.